[No. 30898.    Department One.    June 14, 1949.]

J. Harry Singleton, *Respondent*, v. Joe Woodard, *Appellant*.[1]

*John F. McCarthy*, for appellant.

*Ralph Armstrong*, for respondent.

Mallery, J.—This is an appeal from a $4,266 judgment for plaintiff in an action tried to the court, brought by J. Harry Singleton against Joe Woodard, the owner and driver of a logging truck and trailer into which plaintiff crashed his automobile.

The collision occurred at 8:25 a. m. January 13, 1948, within the Kelso city limits on the West Side highway, a two-lane strip of blacktop with gravelled shoulders six feet wide, bordered on each side by city street curbs thirty feet

[1]Reported in 206 P. (2d) 1034.

apart. It runs north and south, and on the west side is a narrow, slightly sunken area beyond which is a sidewalk two feet below the highway surface. A private driveway rises from this depression, crosses the sidewalk, and enters the highway at a right angle. Fifty feet north of the driveway and between the curb and the sidewalk is located a telephone pole and leafless bushes, which at the time of the accident, reached a height four feet above the highway surface. It being midwinter, it was a cold, dry morning; the surface of the highway was frosty or icy.

Near the telephone pole, the highway bends slightly to the west. Farther north, the highway makes a turn which completely obscures a southbound driver's view of the point of impact until he is within six hundred feet of it. The evidence is conflicting as to the precise degree that the telephone pole, the bushes, the slight bend, and the sunken land on the west margin obscured the view of the truck from respondent as he covered the six hundred feet between the turn and the driveway. In any event, once the truck was in the highway his view of it would not have been obscured.

Appellant's truck was a large logging truck, with trailer loaded upon the truck in a manner customary in logging areas. The trailer reach or "stinger" extended two feet beyond the rear of the truck. There was no flag on the reach after the collision. It is uncertain whether a flag was in place prior to the accident.

No one witnessed the collision except the parties, to each of whom the trial court, according to his oral opinion, gave full credence.

According to the appellant, after looking both ways and observing a clear highway to the north for six hundred feet, he backed his truck with trailer loaded thereon from the driveway onto the highway. When the rear of the truck reached the center of the highway, appellant observed respondent's southbound sedan four hundred feet to the north approaching at what he later estimated to have been a rate of forty to forty-five miles an hour. Thereupon, appellant stopped and commenced to drive back into the

driveway. It does not appear whether the truck was still moving forward or had just stopped when the collision occurred. Glass and debris fixed the point of impact on the blacktop about two feet within the west margin, clearly indicating that the extended trailer reach had not cleared the highway. Respondent suggests that appellant did not back out to the center of the highway and then commence to return to the driveway, but that appellant was emerging from the driveway at the time of the collision.

Respondent, driving at what he claims to have been twenty to twenty-five miles an hour, did not see the truck at all and did not see the trailer reach until he was fifty feet from it. He testified that he did not have time to alter his course to the left to avoid the extended trailer reach. He claimed that he had time only to duck behind the wheel to avoid personal injury.

Within an hour of the collision, a doctor examined respondent and found him bruised but found no broken bones. Several hours later, respondent suffered a nervous relapse, which was apparent to those in company with him as he went about his daily tasks. The day following the collision he commenced to suffer severe headaches, which forced him to bed. Subsequently, back and shoulder pains developed, which required eight days' hospitalization and diathermy treatments. Six days after the collision, a spinal tap revealed that there had been a slight concussion. Respondent's disabilities reduced his income during subsequent months.

Appellant contends the trial court erred in finding (1) appellant negligent; (2) respondent free of contributory negligence; and (3) in awarding grossly excessive damages.

■ The record supports the trial court in finding the appellant negligent in not yielding the right of way to the respondent as required by Rem. Rev. Stat., Vol. 7A, § 6360-90 [P.P.C. § 295-31].

Having the right of way, was the respondent nevertheless guilty of contributory negligence? He testified:

"I was driving along, as I say twenty or twenty-five miles an hour. This bend that you are speaking of, I would es-

timate it to be not over fifty feet from the driveway. The bend is north of the driveway. We can pace that off today and see for sure. But I estimated it to be fifty feet from the driveway. As I rounded the bend, I saw this reach sticking out in the road ahead of me. It was impossible— I don't even remember ducking, but I know I did duck. I could not swerve my car, because I did not have time. You would have only a second and a half or two seconds to do anything in that length of time. I don't remember. I happened to do the right thing, I guess. I ducked under the steering wheel."

"No, there was no truck in the road when I rounded the bend or that I could see. All I could see was the pole hanging down. If the truck had been in the road, a person could have seen that, it was pretty tough to see, and too late."

"If the truck was out there, the pole would have been out far enough so I could see it. The corner would not have cut off the view from that. You would have been able to see right past the corner and see that."

And on cross-examination, he testified:

"Q. As you come around that curve five or six hundred feet away you can see that driveway? A. Yes, you could see if you are particularly watching for something that would dart at you, you could see it, yes. Q. So, if that truck was there and it was moving in or out of the driveway, you could have seen it? A. Only I look at the road. You are not expecting things to dart at you from every little driveway. I was looking at the road. Q. As you come along there, this driveway would be practically in front of you as you look ahead? A. No, no; well, yes; it would be in front of me, in the general direction, in front of me, yes."

██ It is not contended that respondent violated any statutory rule of the road. Respondent's failure to see the truck and avoid hitting it is relied upon as being the contributory negligence that should defeat recovery. In the light of appellant's failure to yield the right of way, this is essentially an effort to apply the doctrine of last clear chance. That doctrine is invoked only by a plaintiff seeking damages. It is not available to a defendant. *Colvin v. Simonson,* 170 Wash. 341, 16 P. (2d) 839, 92 A. L. R. 54. It is therefore not a defense in the instant case.

Appellant's third assignment of error is: "The amount of damages awarded to the respondent is grossly excessive."

■ The record indicated that respondent had expended $301 on medical expenses directly attributable to the collision, and suffered a $465 loss in damages to his car. It indicates that respondent received immediate physical injury to his head, neck, and back, and subsequently suffered nervous shock, headaches, and disabilities, which compelled him to give up some employment which reduced his income and which may continue to reduce his earning power. The trial court's assessment of general damages of $3,500 is to be given much weight. We are not prepared to disturb it.

The judgment is affirmed.

JEFFERS, C. J., and BEALS, J., concur.

STEINERT and HILL, JJ., concur in the result.